## 8.     CRIMINAL HISTORY

**Reason for Amendment:** This amendment is the result of several Commission studies regarding the nature of the criminal history of federal offenders, including analyses of the number and types of prior convictions included as criminal history and the ability of the criminal history rules to predict an offender's likelihood of rearrest. While these studies continue to recognize the close association between an offender's criminal history calculation under the guidelines and the likelihood of future recidivism, the amendment makes targeted changes to reduce the impact of providing additional criminal history points for offenders under a criminal justice sentence (commonly known as "status points"), to reduce recommended guideline ranges for offenders with zero criminal history points under the guidelines ("zero-point offenders"), and to recognize the changing legal landscape as it pertains to simple possession of marihuana offenses. These targeted amendments balance the Commission's mission of implementing data-driven sentencing policies with its duty to craft penalties that reflect the statutory purposes of sentencing.

*Part A – Status Points*

Part A of the amendment addresses "status points" for offenders, namely the additional criminal history points given to offenders for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. The amendment redesignates current subsection (d) of §4A1.1, which addresses "status points," as subsection (e) and redesignates current subsection (e), which addresses multiple crimes of violence treated as a single sentence, as subsection (d). This redesignation is made for ease of application.

Under the previous "status points" provision, two criminal history points were added under §4A1.1(d) if the defendant committed the instant offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The amendment limits the overall criminal history impact of "status points" in two ways. First, as revised, the "status points" provision under redesignated subsection (e) applies only to offenders with more serious criminal histories under the guidelines by requiring that an offender have seven or more criminal history points under subsections (a) through (d) in addition to having been under a criminal justice sentence at the time of the instant offense. Offenders with six or fewer criminal history points under subsections (a) through (d) will no longer receive "status points." Second, the amendment also reduces from two points to one point the "status points" assessed for offenders to whom the revised provision applies. Part A of the amendment also makes conforming changes to the Commentary to §4A1.1, §2P1.1 (Escape, Instigating or Assisting Escape), and §4A1.2 (Definitions and Instructions for Computing Criminal History).

As part of its study of criminal history, the Commission found that "status points" are relatively common in cases with at least one criminal history point, having been applied in 37.5 percent of cases with criminal history points over the last five fiscal years. Of the offenders who received "status points," 61.5 percent had a higher Criminal History Category as a result of the addition of the "status points." The Commission also recently published a series of research reports regarding the recidivism rates of federal offenders. *See, e.g.*, U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010

(2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. These reports again concluded that an offender's criminal history calculation under the guidelines is strongly associated with the likelihood of future recidivism by the defendant. In a related publication, the Commission also found, however, that status points add little to the overall predictive value associated with the criminal history score. *See* U.S. SENT'G COMM'N, REVISITING STATUS POINTS (2022), available at https://www.ussc.gov/research/research-reports/revisiting-status-points.

The Commission's action to limit the impact of "status points" builds upon its tradition of data-driven evolution of the guidelines. As described in the Introduction to Chapter Four, the original Commission envisioned status points as "consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior" and therefore envisioned "status points" as being reflective of, among other sentencing goals, the increased likelihood of future recidivism. *See* USSG Ch.4, Pt.A, intro. comment. The original Commission also explained, however, that it would "review additional data insofar as they become available in the future." The Commission's recent research suggests that "status points" improve the predictive value of the criminal history score less than the original Commission may have expected, suggesting that the treatment of "status points" under Chapter Four should be refined.

Accordingly, the Commission determined that it was appropriate to address several concerns regarding the scope and impact of status points. In taking these steps, the Commission observed that the operation of the *Guidelines Manual* separately accounts for consecutive punishment imposed upon revocations of supervised release, a likely occurrence if an offender was under a criminal justice sentence during the commission of another offense. The Commission further recognized that it is also possible that an offender's criminal history score would be independently increased as the result of additional time imposed as the result of a revocation of probation or supervised release for the offense that also results in the addition of status points.

At the same time, by retaining "status points" for those offenders in higher criminal history categories, the Commission continues to recognize that "status points," like the other criminal history provisions in Chapter Four, reflect and serve multiple purposes of sentencing, including the offender's perceived lack of respect for the law, as reflected both in the offender's overall criminal history and the fact that the offender has reoffended while under a criminal justice sentence ordered by a court. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

The Commission concluded that accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points.

### Part B – Zero-Point Offenders

Part B of the amendment includes three subparts making changes pertaining to offenders who did not receive any criminal history points from Chapter Four, Part A. Subpart 1 provides for an adjustment for certain offenders with zero criminal history points. Subpart 2 revises §5C1.1 (Imposition of a Term of Imprisonment) to implement the congressional directive at 28 U.S.C. § 994(j). Finally, Subpart 3 makes other conforming changes.