UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

– against –

JONATHAN GHERTLER,

                Defendant.

**OPINION & ORDER**

23-cr-100 (ER)

---

RAMOS, D.J.:

      On May 14, 2024, Jonathan Ghertler filed a *pro se* letter motion for a reduction of his sentence. Doc. 53. For the reasons set forth below, his motion is DENIED.

## I. BACKGROUND

      Ghertler has a long and winding history of orchestrating large-scale fraudulent schemes. Doc. 56 at 9–10. In 1994, he defrauded MGM Grand Hotel and Casino out of $100,000 by posing as a high stakes blackjack player, for which he was sentenced to 10 years of imprisonment. *Id.* at 9. In 1995, Ghertler impersonated the Vice President of Lockheed Missile and Space Company and convinced Lockheed employees to send him $60,000 to fund an audit, for which he was sentenced to 30 months of imprisonment. *Id.* In 2000, he impersonated partners at a law firm and convinced employees at the firm to wire him a total $105,000, for which he was sentenced to 71 months of imprisonment. *Id.* In 2007, Ghertler impersonated the general counsels of multiple corporations and persuaded employees to wire him money, for which he was sentenced to 162 months of imprisonment. *Id.* at 10.

      Turning to the instant matter, in May 2021, while living in a halfway house after violating the terms of his supervised release from a previous fraud conviction, Ghertler began impersonating the billionaire founder of an investment firm. Doc. 56 at 1. While posing as the firm's billionaire founder, Ghertler contacted the CEO of a company in the

firm's portfolio, claiming he needed them to pay a non-existent private investigator who was looking into the billionaire founder's links to Jeffrey Epstein.  *Id.*  Over the following two years, Ghertler continued demanding money from the CEO of the portfolio company, and was wired a total of $910,000.  *Id.* at 2.

In February 2023, Ghertler impersonated the chairman of a global law firm during two phone calls.  *Id.* at 3.  During the first call, speaking with two FBI special agents and an Assistant United States Attorney, Ghertler reported that he, as the chairman of the global law firm, represented the billionaire founder and investment firm.  *Id.*  He told those on the other end of the call that the investment firm had been "made whole" following the fraudulent scheme he perpetrated and thus declined to report the crime to law enforcement.  *Id.*  During the second call, again posing as the chairman of the global law firm, Ghertler told FBI special agents to discontinue their investigation because, "if the money was paid back prior to…the crime being…discovered…it's not a crime."  *Id.*  Ghertler added that the billionaire founder of the investment firm "has a lot of other issues he is dealing with right now, so this is one he really doesn't need to deal with."  *Id.*

On June 30, 2023, Ghertler pleaded guilty to one count of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2, and one count of making false statements, in violation of Title 18, United States Code, Sections 1001(a)(1), 1001(a)(2), and 2.  *Id.* at 4.  On September 27, 2023, the Court sentenced Ghertler to 72 months imprisonment, noting that it was "the first time in [the Court's] tenure that specific deterrence [was] a significant factor in imposing a sentence for someone who is 60, 62 years old."  *Id.* (citing Doc. 46 at 22).

On November 28, 2023, Ghertler filed his first *pro se* letter motion for compassionate release, asserting that he had not been able to see a doctor since he had been detained, and asking that he be released so that he could obtain medical treatment for leukemia.  Doc. 48.  The Court denied Ghertler's request thereafter, noting that he

would "shortly be transferred to a prison hospital facility where he will be able to receive treatment to the extent required." Doc. 52.

On May 14, 2024, Ghertler filed the instant motion for a reduction in sentence. Doc. 53. Ghertler asks the Court to reduce his term of imprisonment from 72 months to 48 months because (1) he would like to participate in a residential drug program, and "drugs are very available in the Bureau of Prisons"; (2) he is Jewish and "it is very difficult [to be] in prison during these difficult times"; and (3) he is being treated for leukemia. Doc. 53 at 1–2. In his letter motion, Ghertler attached a note which he says he wrote to the warden of his current correctional institution on March 10, 2024, asking for a "compassionate release sentence reduction for both medical and mental health issues." *See* Doc. 53 at 3. According to the Government, the correctional institution has no record of receiving the note, raising the possibility that the request was never actually made. Doc. 56 at 7.

On May 28, 2024 and June 3, 2024, Ghertler sent the Court supplemental letters detailing vocational and recreational activities that he is currently involved, in addition to specifying a residential rehabilitation program that he would like to enter upon release. *See* Doc. 55; Doc. 57.

On June 6, 2024, the Government responded, opposing Ghertler's request. Doc. 56.

II.   **LEGAL STANDARD**

"Pursuant to 18 U.S.C. § 3582(c)(1) as modified by the First Step Act, a district court may reduce a term of imprisonment upon motion by a defendant." *United States v. Fernandez*, 104 F.4th 420, 426 (2d Cir. 2024) (quoting *United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022)). The compassionate release analysis is a two-step process: "the district judge first determines whether extraordinary and compelling reasons exist to modify the sentence, and if such reasons exist, the court then considers the Section 3553(a) factors in evaluating what reduction, if any, is appropriate." *United States v.*

3

*Griffin*, No. 22 Cr. 408 (EK), 2024 WL 2891686, at *1 (E.D.N.Y. June 10, 2024). "District courts may 'consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them.'" *Fernandez*, 104 F.4th at 426 (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).

A sentence reduction under 18 U.S.C. § 3582(c)(1) must also be "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Stokes*, No. 19 Cr. 307 (SRU), 2024 WL 216643, at *1 (D. Conn. Jan. 19, 2024). "The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines [] § 1B1.13 and Commentary," as amended and effective November 1, 2023. *Id.* at *2. This update was "meant to accord with the First Step Act's purpose of increasing the use of sentence reduction motions under section 3582(c)(1)(A)." *United States v. Donato*, No. 03 Cr. 929 (NGG), 2024 WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024) (internal quotation marks and citation omitted).

The policy statement provides examples of what may establish an extraordinary and compelling reason: "(1) a defendant's medical circumstances; (2) a defendant's age; (3) a defendant's family circumstances; and (4) abuse suffered by the defendant while in custody." *Id.* (internal citations omitted). The policy statement "also includes a catch-all provision authorizing the court to consider 'Other Reasons' that demonstrate extraordinary and compelling reasons warranting a reduction in sentence," where those other reasons are "similar in gravity" to the examples provided. *Id.* Thus, the policy statement "affords the court significant discretion to determine when a reduction in sentence is warranted." *Id.*

A court may make such a sentence modification only:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . .

*United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (emphasis omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Finally, *pro se* submissions such as Ghertler's "are reviewed with 'special solicitude' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

### III.  DISCUSSION

As an initial matter, the Government disputes whether Ghertler exhausted his administrative remedies, as required by § 3582. Doc. 56 at 7. First, the Government argues that the note Ghertler purportedly sent to the warden is too vague, precluding the Bureau of Prisons from adequately evaluating the merits of the request. *Id.* In the note, which Ghertler attaches as an exhibit to his motion, Ghertler requests a "compassionate release sentence reduction for both medical and mental health issues." Doc. 53 at 3. The Government presents no authority for the proposition that a request to the Bureau of Prisons for compassionate release must mirror the request later presented to the Court or be made with some requisite level of specificity. As it stands, courts in this district overwhelmingly agree that the compassionate release statutory scheme does not require litigants to raise every argument that may support compassionate release to the Bureau of Prisons. *See, e.g., United States v. Torres*, 464 F. Supp. 3d 651, 657 (S.D.N.Y. 2020) ("the nature of the [Bureau of Prisons'] compassionate-release process confirms that, as in *Sims*, a judicially created issue-exhaustion requirement is inappropriate.") (quotations and citation omitted); *United States v. Salemo*, No. 11 Cr. 65 (JSR), 2021 WL 4060354, at *3 (S.D.N.Y. Sept. 7, 2021) ("a defendant may raise new issues in a motion for sentence modification so long as he has applied to BOP and either exhausted his administrative appeals of BOP's denial of that application or waited for 30 days."); *United States v. Delgado*, 582 F. Supp. 3d 136, 140 (S.D.N.Y. 2022) ("The Court thus declines to impose

5

a judicially created issue exhaustion requirement in [the sentence reduction] context.") (quotations and citation omitted); *United States v. Gunn*, No. 06 Cr. 911 (AKH), 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022) ("the compassionate release statute does not require that specific arguments or claims be raised.") (quotations and citation omitted); *United States v. Herrera*, No. 17 Cr. 415 (PAC), 2023 WL 3614343, at *4 (S.D.N.Y. May 24, 2023) ("[Section] 3582(c)(1)(A) does not demand issue exhaustion.").

Second, and more importantly, the Government contests whether Ghertler actually sent the note requesting a reduction of his sentence to the warden, because that the correctional institution has no record of receiving it. Doc. 56 at 7. According to Ghertler, he has made multiple requests to the warden, and he feels that they are all likely sent to a "shredder" since the wardens "simply don't respond to requests." Doc. 59 at 2.

Assuming without deciding that the note was actually sent, Ghertler does not merit a reduction pursuant to § 3582(c)(1)(A)(i). A reduction of Ghertler's sentence would be inconsistent with the factors enumerated in § 3553(a). Those factors include:

> the nature and circumstances of the offense; the history and characteristics of the defendant, including age, being a non-violent offender, and remorse; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the affordance of adequate deterrence; and the protection of the public from further crimes of the defendant.

*United States v. Herbert*, No. 03 Cr. 211 (SHS), 2024 WL 1931962, at *2 (S.D.N.Y. May 2, 2024) (citing 18 U.S.C. § 3553(a)).

First, Ghertler's individual history and characteristics weigh in favor of maintaining the imposed sentence. By his own admission, Ghertler "gets a rush from the success of the con." Doc. 56 at 9. As set forth above, he has a long history of conducting fraudulent schemes in a similar fashion to those in the instant matter. While the Court is troubled by the difficulties Ghertler has faced while incarcerated and hopes that they are promptly resolved, it must consider "the protection of the public from further crimes of the defendant." 18 U.S.C. § 3553(a)

Moreover, Ghertler's fraud in the instant matter was recurrent and widespread. Over the course of almost two years, he orchestrated multiple fraudulent schemes, stealing over $1 million. Doc. 56 at 9. As authorities caught on, he attempted to evade detection by impersonating the chairman of a law firm in calls to FBI special agents and an Assistant United States Attorney. *Id.* at 3. In total, Ghertler defrauded three companies, victimizing not only those whose funds he pilfered, but also those whose identities he assumed in perpetrating the schemes. *Id.* at 9. Thus, Ghertler's seventy-two-month sentence, and the approximately forty-two months he has remaining, is commensurate with his repeated engagement in fraud and evasion of the law.[1]

Accordingly, the Court declines to reduce Ghertler's sentence. *See United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) ("Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.")

### IV.    CONCLUSION

For all of these reasons, Ghertler's motion is DENIED. The Clerk is respectfully directed to terminate the motion, Doc. 53. The Clerk of Court is also respectfully directed to mail a copy of this opinion to Ghertler.

It is SO ORDERED.

Dated:   August 5, 2024
         New York, New York

                                                          _____
                                                          EDGARDO RAMOS, U.S.D.J.

---

[1] According to the Bureau of Prisons, Ghertler has an anticipated release date of January 28, 2028. *See Find an Inmate*, Bureau of Prison ("BOP"), https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited August 5, 2024).